UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

PCL (SHIPPING) PTE. LTD.,

        Plaintiff,

- against -

AGARWAL COAL CORPORATION,

        Defendant.

----------------------------------------------------------------X

ECF CASE



## VERIFIED COMPLAINT

Plaintiff, PCL (SHIPPING) PTE. LTD. (hereinafter "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, AGARWAL COAL CORPORATION, (hereinafter "Defendant") alleges, upon information and belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach of maritime contract of charter. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331.

2.     At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity organized and existing under foreign law.

3.     Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity organized and existing under the laws of India.

4.     At all times material to this action, Plaintiff was the disponent owner of the M/V IKAN SERONG (hereinafter the "Vessel").

5.     By an Americanized Welsh Coal Charter Party dated October 11, 2007 (hereinafter the "Charter Party") Plaintiff chartered the Vessel to Defendant for the carriage of 50,000 MT bulk coal from the load port of Muara Pantai, Indonesia to the discharge port of Magdalla, W.C. India or Navlakhi, W.C. India, at Defendant's option. *See charter party attached hereto as Exhibit "1"*.

6.     Pursuant to Clause 42 of the Charter Party, freight was to be paid at the rate of $42.00 PMT FIOT[1] should Defendant discharge at Magdala, W.C. India, and the rate of $41.55 PMT FIOT should Defendant discharge at Navlakhi W.C. India. *See Exhibit "1"*.

7.     Clause 65 of the Charter Party provides "95 pct freight to be paid to Owners nominated bank account within 3 working days after completion loading but always before breaking bulk and signing/releasing Bill(s) of Lading marked 'freight payable as per charter-party' and balance within 30 days after completion of discharge along with demurrage/despatch settlement." *See Exhibit "1"*.

8.     Defendants optioned to discharge the cargo at Navlakhi, W.C. India. Freight became due and owing from Defendant to Plaintiff at a rate of $41.55 for 55,061 PMT of coal for a total of $2,287,784.55. *See Plaintiff's invoice dated May 13, 2008, attached hereto as Exhibit "2"*.

9.     The Charter Party provided for demurrage[2]/despatch[3] payments of $70,000 per day, laytime[4] not reversible between load/discharge ports. *See Exhibit 1*.

---

[1] "FIOT" is an acronym for "free in and out trimmed" and describes an agreement in which the ship owner does not pay for expenses at the loading port, including trimming costs, and the discharging port. The Shipper and receiver are responsible for the risk and expense of loading, trimming, and discharging the cargo.

[2] Demurrage is a fixed sum, per day or per hour, agreed to be paid for the detention of the vessel under charter at the expiration of laytime allowed.

[3] Despatch is an incentive payment paid to a carrier to loading and unloading the cargo faster than agreed.

10.     The Charter Party allowed for 4 days, 14 hours and 7 minutes of laytime. Defendant used 7 days, 16 hours and 15 minutes of laytime. Therefore, Defendant owed 3.08889 days of demurrage at $70,000 per day, for a total of $216,222.30 due and owing to Plaintiff. *See Laytime Statement attached hereto as Exhibit "3".*

11.     Defendant earned a despatch credit at the discharge port of $37,673.65, and made two payments to Plaintiff under the Charter Party totaling $2,406,968.70, leaving a total amount due and owing to the Plaintiff under the Charter Party of $59,364.50. *See Exhibit "2".*

12.     Defendant has breached the terms of the Charter Party by failing to pay freight and demurrage due and owing to Plaintiff in the amount of $59,364.50 under the Charter Party.

13.     Pursuant to the Charter Party, disputes between the parties are to be submitted to arbitration in London with English law to apply. Plaintiff will commence arbitration after the commencement of this action and jurisdiction is obtained over Defendant.

14.     This action is brought in order to obtain jurisdiction over Defendant and also to obtain security for Plaintiff's claims and in aid of arbitration proceedings.

15.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.

16.     As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

a.     Plaintiff's principal claim:                     $ 59,364.50
       *Freight and Demurrage payments*

b.     Interest on Principal Claim for 2 years, compounded quarterly

---

[4] Laytime refers to the time allowed by the shipowner to the voyage charterer in which to load and/or discharge the cargo.

|  | quarterly at 7%: | $ · 8,838.29 |
| c. | Estimated arbitration costs: | $ 5,000.00 |
| d. | Estimated recoverable legal fees and costs: | $ 15,000.00 |
| **Total:** | | **$ 88,202.79** |

17.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant.

18.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any property of the Defendant held by any garnishee within the District for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That pursuant to 9 U.S.C. §§ 201, *et seq.* and/or the doctrine of comity this Court recognize and confirm any foreign judgment or arbitration award rendered on the claims had herein as a Judgment of this Court;

C.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims,

attaching all tangible or intangible property of the Defendant within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendant, up to the amount $88,202.79 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.     That this Court enter Judgment against Defendant on the claims set forth herein;

E.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.     That this Court award Plaintiff its attorney's fees and costs of this action; and

G.     That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: May 27, 2008
        New York, NY

                         The Plaintiff,
                         PCL (SHIPPING) PTE. LTD.


                         By: _Anne C. LeVasseur_
                             Patrick F. Lennon
                             Anne C. LeVasseur
                             LENNON, MURPHY & LENNON, LLC
                             420 Lexington Ave., Suite 300
                             New York, NY 10170
                             (212) 490-6050 – phone
                             (212) 490-6070 – fax
                             pfl@lenmur.com
                             acl@lenmur.com

## ATTORNEY'S VERIFICATION

State of Connecticut )
                     )     ss.:     Town of Southport
County of Fairfield  )

1.    My name is Anne C. LeVasseur.

2.    I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.    I am an attorney with the law firm of Lennon, Murphy & Lennon, LLC, attorneys for

the Plaintiff.

4.    I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information and

belief.

5.    The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.    The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents and/or

representatives of the Plaintiff.

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated:       Southport, CT
             May 27, 2008

                                    _Anne C. LeVasseur_
                                    Anne C. LeVasseur

6

# EXHIBIT 1

Case 1:08-cv-04872-RJH    Document 1    Filed 05/27/2008    Page 8 of 27

FORM NO 30-104

# AMERICANIZED WELSH COAL CHARTER

APPROVED BY
ASSOCIATION OF SHIP BROKERS & AGENTS (U.S.A.), INC.
NEW YORK – 1953; AMENDED 1979.

Singapore, 11th Oct    19 2007

1    It is this day mutually agreed, *BETWEEN* M/s PCL *(Shipping) PTE Ltd., Singapore*
2    Owner of the *Mv Ikan Serong*                        **as Disponent**
3    of           , built    *See Clause 31*   at             ~~Steamship/Motorship~~
4    tons net register, or thereabouts, and about                of
5    in                    length overall        tons total deadweight inclusive of bunkers, classed
6    draft                  now                                   beam
7    and   *M/s Agarwal Coal Corporation, India*                  Charterer;
8    1.  That the said vessel being tight, staunch and strong, and in every way fitted for the voyage, shall, with all *convenient* ~~possible~~ dis-
9    patch, sail and proceed to  *1 SP 1/2 SA(S) Muara Pantai, Indonesia. (See Clause 79)*
10                    and there load, always afloat, in the customary manner from the Charterer, in such dock
11    as may be ordered by him, ~~a full and complete~~ cargo of coal ~~not exceeding~~  *50,000 MT 10% MOLOO Bulk Coal*   ~~tons nor less than~~
12    ~~tons, quantity at Vessel's option~~, and not exceeding what she can reasonably stow and carry,
13    over and above her tackle, apparel, provisions and furniture; and being so loaded, shall therewith proceed, with all *maximum possible*
     dispatch, to *in Charterers' option 1/2 SA(S) Magdalla, W.C. India / 1/2 SA(S) Navlakhi, W.C. India. Charterers' confirm no draft*
     *restrictions at discharge port Magdalla / Navlakhi. (See Cls 80)*

14    or so near thereunto as she can safely get, and there deliver her cargo alongside any wharf and/or vessel and/or craft, as ordered,
15    where she can safely deliver, always afloat, on being paid freight at the rate of  *See also Clause 42*
16                                  U.S. currency per ten of 1,000 kilos
17    required, a statutory declaration by the master and other officers that all cargo received on board has been delivered. The Owner shall furnish, if
18    is in full of loading, dumping and trimming, and all port charges, pilotages, agency fees and consulages on the vessel. All wharfage
19    dues on the cargo to be paid by the Charterer.
20    2.  The FREIGHT is to be paid  *See Clause 42 & 65*
21    3.  Notice of approximate quantity of cargo required and of vessel's expected date of arrival at port of loading to be given to
22    ~~Charterer or his agents at least~~                days in advance. *See Clause 35*
23    4.  The Cargo to be loaded into vessel  *12,000 MT PWWD SHINC* basis 24 consecutive hours time excluding 6 statutory
24    *holidays for anchorage loading*                     weather-working days(s) of 24 consecutive hours,
25    ~~(excluding bunkering time, Sundays, custom house, colliery, legal and/or local holidays, and from noon on Saturday or the day~~
26    ~~previous to any such holiday to 7 a.m. on Monday or the day after any such holiday, unless used to load, in which event only time actually~~
27    used in loading cargo to count) commencing *12 24* hours after vessel tenders and is ready to load, unless sooner worked, *in which case*
28    *time actually used to count* whereupon time
29    is to commence and written notice is given of the vessel's being completely discharged of inward cargo and ballast in all her holds
     and ready to load, such notice to be given *See Clause 35* ~~between business hours of 9 a.m. and 5 p.m., or 9 a.m. and 1 p.m. on Saturdays.~~
     ~~Any time~~
30    ~~lost through riots, strikes, lockouts, or any dispute between masters and men, occasioning a stoppage of pitmen, trimmers or other~~
31    ~~hands connected with the working or delivery of the coal for which the vessel is demurred, or by reason of accidents to mines or~~
32    ~~machinery, obstructions, embargo or delay on the railway or to the dock; or by reason of fire, floods, frosts, fogs, storms or any cause~~
33    ~~whatsoever beyond the control of the Charterer affecting mining, transportation, delivery and/or loading of the coal, not to be com-~~
34    ~~puted as part of the loading time (unless any cargo be actually loaded during such time). In the event of any stoppage or stoppages~~
35    ~~arising from any of these causes continuing for the period of six running days from the time of the vessel's being ready to load, this~~
36    ~~Charter shall become null and void, provided, however, that no cargo shall have been shipped on board the vessel previous to such stop-~~
37    ~~page or stoppages. In case of partial holiday, or partial stoppage of colliery, collieries or railway from any or either of the aforenamed~~
38    ~~causes, the lay-days to be extended proportionately to the diminution of output arising from such partial holiday or stoppage. If~~
39    ~~longer detained, Charterers to pay~~           –U.S. Currency per running day (or pro rata for part thereof)
40    demurrage. If sooner dispatched, vessel to pay Charterer or his agents–      –U.S. Currency per day (or pro rata
41    ~~for part thereof) dispatch money for~~          –time saved. No deduction of time shall be allowed for stoppage, unless due
42    ~~notice be given at the time to the master or Owner.~~
     *DEMURRAGE/DESPATCH US$ 70,000 PDPR / DHD WTS*
     *LAYTIME NON REVERSIBLE BETWEEN LOAD/DISCHARGE PORTS.*
43    5.  If any dispute or difference should arise under this Charter, same to be referred to three parties in the City of *London* ~~New York~~,
     one
44    to be appointed by each of the parties hereto, the third by the two so chosen, and their decision, or that of any two of them, shall
45    be final and binding, and this agreement may, for enforcing the same, be made a rule of Court. Said three parties to be commercial
46    men *who are members of the Institute of Arbitrators in London. English Law to apply and arbitrations and General Average in*
     *London.*
47    6.  The cargo to be loaded, *spout* dumped and *seaworthy*, trimmed by men appointed by the Charterer ~~at the tariff rate of the port of~~
48    ~~vessels~~ *its expense, under the responsibility and supervision of the Master, any additional trimming required is to be for Owner' account.*
49    7.  The bills of lading shall be prepared in accordance with the ~~dock or railway weight~~ *draft survey* and shall be endorsed by the
     master.
50    agent or Owner, *as per Mate's Receipts,* weight unknown, freight and all conditions as per this Charter, such bills of lading to be signed at
     the Char-
51    terer's or shipper's office within twenty-four hours after the vessel is loaded. ~~Master shall sign a certificate stating that the~~
52    ~~weight of the cargo loaded is in accordance with railway weight certificate. Charterer is to hold Owner harmless should any~~
53    ~~shortage occur.~~
54    8.  The Act of God, the king's enemies, restraints of princes and rulers, and perils of the sea excepted. Also fire, barratry of

Page 1      (seal: SHIPPING ...)                                                 FORM NO. 30-104

55 the master and crew, pirates, collisions, strandings and accidents of navigation, or latent defects in or accidents to, hull and/or
56 machinery and/or boilers always excepted, even when occasioned by the negligence, default or error in judgment of the pilot, master,
57 mariners or other persons employed by the shipowner, or for whose acts he is responsible, not resulting, however, in any case from
58 want of due diligence by the Owner of the ship, or by the ship's husband or manager. Charterer not answerable for any negligence,
59 default, or error in judgment of trimmers or stevedores employed in loading or discharging the cargo. The vessel has liberty to call
60 at any ports in any order, to sail without pilots, to tow and assist vessels in distress, and to deviate for the purpose of saving life or
61 property, and to bunker.

62      9.   The cargo to be discharged by consignee at port of discharge, free of expense and risk to the vessel, at the average rate of
63 *10,000 MT PWWD SHINC* at *Magdalla* & *13,500 MT PWWD SHINC* at *Navkakahi* basis 24 *consecutive hours but always excluding 6*
*statutory holidays unless used if used actual time used to count* ~~one per day, weather permitting. Sundays and holidays and after noon on~~
~~Saturdays excepted provided~~
64 ~~vessel can deliver it at this rate. If longer detained, consignee to pay vessel demurrage at the rate of~~ ~~U.S. currency~~
65 ~~(or running day (or pro rata for part thereof). If sooner dispatched, vessel to pay Charterer or his agents~~ ~~U.S. cur-~~
66 ~~rency per day (or pro rata for part thereof) dispatch money for~~ ~~time saved~~
*DEMURRAGE/DESPATCH US$ 70,000 PDPR/DHD WTS*
*LAYTIME NON REVERSIBLE BETWEEN LOAD/DISCHARGE PORTS.*

67 [Time to commence *twelve (12)* ~~twenty-four (24)~~
hours ~~Sundays and holidays excepted,~~ after vessel is ready to unload *unless sooner commenced in which case actual time to count*
~~and written notice given, whether in berth or not,~~ *See Clause 63* (even if vessel
68 is already on demurrage, and the time allowable for discharging to be calculated on the basis of the bill of lading quantity. In case
69 of strikes, lockouts, civil commotions, or any other causes or accidents beyond the control of the consignee which prevent or delay
70 the discharging, such time is not to count unless the vessel is already on demurrage.
71      10.   Notice at port of discharge ~~to be given in writing to consignees agent on working days between the hours of 9 am and~~
72 ~~5 p.m. and 9 a.m. and noon on Saturdays. See Clause 63~~
73      11.   Shifting time from anchorage place to loading or discharging berth is *not to count even if vessel is already on demurrage.*
74      12.   *First* Opening and *last* closing of hatches at ~~commencement and completion~~ of loading and discharging shall be for Owner's
75 account *and actual time lost is not to count as laytime* ~~time used is not to count See Clause 40~~.
76      13.   Lighterage, if any, at discharge port to be at the risk and expense of consignees and time used to count as laytime.
77      14.   In case of average, the same to be settled *in London* according to York/Antwerp Rules 1974 *as amended 1990.* Should the
78 vessel put into any port or ~~ports leaky or with damage, the captain or Owner shall, without delay, inform the Charterer thereof. Captain to telegraph Charterer~~
79 ~~in case of putting in anywhere.~~
80      15.   Vessel not to tender before ~~9 a.m. on~~ *See Cls 32*
81 ~~before 9 a.m. on   See Cls 32~~          . . . or if any wilful misrepresentation be made respecting the size, position or state of
82 the vessel, Charterer to have the option of cancelling this Charter, such option to be declared on notice of readiness being given.
83      16.   Vessel to be consigned to   *Charterers nominated* agents at port of loading, and to   *Charterers nominated* agents at port
84 of discharge. *(See also Cls 59)*
85      17.   Overtime is to be for account of party ordering same. However, if ordered by port authorities, same is to be for Charterer's
86 account Officers' and crew's overtime expenses to be for Owner's account.
87      18.   Extra insurance, if any, due to vessel's age, flag, classification or ownership shall be for Owner's account. *(See also Clause 34)*
88      19.   No cargo is to be loaded in deeptanks or similar places inaccessible to reach by grabs.
89      20.   ~~Any damage by stevedores shall be settled directly between Owner and stevedores. See Clause 53~~
90      21.   Owner shall, at his risk and expense, comply with all applicable rules, regulations and laws relevant to water and/or air
91 pollution at ports of loading and discharging. ~~In cases where vessel calls at a U.S. port, Owner warrants to have executed and carry~~
92 ~~on board the vessel a Certificate of Financial Responsibility as required under U.S. law.~~
93      22.   All bills of lading shall include the following three clauses:
94      NEW JASON CLAUSE: In the event of accident, danger, damage or disaster before or after commencement of the voyage,
95 resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier
96 is not responsible, by statute, contract or otherwise, the goods, shippers, consignees or owners of the goods shall contribute
97 with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be
98 made or incurred, and shall pay salvage and special charges incurred in respect of the goods.
99      If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if such salving ship or ships belonged
100 to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and
101 any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to
102 the carrier before delivery.
103      CLAUSE PARAMOUNT: This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act
104 of the United States, approved April 16th, 1936, which shall be deemed to be incorporated herein, and nothing herein contained
105 shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or
106 liabilities under said Act. If any terms of this bill of lading be repugnant to said Act to any extent, such term shall be void to
107 that extent but no further.
108      NEW BOTH-TO-BLAME COLLISION CLAUSE: If the ship comes into collision with another ship as a result of the
109 negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier in the
110 navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the carrier against all
111 loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to,
112 or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying ship or her owners to the
113 owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim
114 against the carrying ship or carrier.

115      The foregoing provisions shall also apply where the owners, operators or those in charge of any ship or ships or objects other

116     than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

117    23.  PROTECTION & INDEMNITY BUNKERING CLAUSE: The vessel in addition to all other liberties shall have liberty as

118  part of the contract voyage and at any stage thereof to proceed to any port or ports whatsoever whether such ports are on or off

119  the direct and/or customary route or routes to the ports of loading or discharge named in this Charter and there take oil bunkers in

120  any quantity in the discretion of Owners even to the full capacity of fuel tanks, deep tanks and any other compartment in which

121  oil can be carried whether such amount is or is not required for the chartered voyage.

122    24.  ~~C.S.I.X. WAR RISKS CLAUSES 1 & 2) No bills of lading to be signed for any blockaded port and if the port of dis-~~

123  ~~charge be declared blockaded after bills of lading have been signed, or if the port to which the ship has been ordered to discharge~~

124  ~~either on signing bills of lading or thereafter be one to which the ship is or shall be prohibited from going by the government of~~

125  ~~the nation under whose flag the ship sails or by any other government, the Owner shall discharge the cargo at any other port covered~~

126  ~~by this Charter Party as ordered by the Charterers (provided such other port is not a blockaded or prohibited port as above men-~~

127  ~~tioned) and shall be entitled to freight as if the ship had discharged at the port or ports of discharge to which she was originally~~

128  ~~ordered.~~

129  ~~The ship shall have liberty to comply with any orders or directions as to departure, arrival, routes, ports of call, stoppages, destina-~~

130  ~~tion, delivery or otherwise howsoever given by the government of the nation under whose flag the vessel sails or any department~~

131  ~~thereof, or any person acting or purporting to act with the authority of such government or of any department thereof, or by any~~

132  ~~committee or person having, under the terms of the war risks insurance on the ship the right to give such orders or directions and~~

133  ~~if by reason of and in compliance with any such orders or directions anything is done or is not done, the same shall not be deemed~~

134  ~~a deviation, and delivery in accordance with such orders or directions shall be a fulfillment of the contract voyage and the freight~~

135  ~~shall be payable accordingly.~~

136    25.  Charterer shall have the privilege of transferring part or whole of the Charter Party to others, Charterer guaranteeing to the

137  Owner due fulfillment of this Charter Party.

138    26.  The Charterer's liability shall cease as soon as the cargo is shipped, and the freight, dead freight and demurrage in loading

139  (if any) are paid, the Owner having a lien on the cargo for freight, demurrage and average. *In case of deadfreight then the time allowed*

    *for loading and discharging shall be calculated on basis of tonnage for which freight is paid and not on the actual quantity loaded.*

140    27.  Penalty for non-performance of this agreement, proved damages, not exceeding the estimated amount of freight.

141    28.  ~~An address commission of ~~ ~~percent on the gross amount of freight, dead freight and demurrage is due by the vessel~~

142  ~~and Owner to the Charterer on payment of freight.~~

143    29.  A commission of  *1.25*  percent on the gross amount of freight, dead freight and demurrage is due on payment

144  of freight by the vessel and Owner to  *Saigol SeaTrade Mumbai*

*Rider Clauses 30 - 80 plus Additional clauses are deemed to be fully incorporated in this Charter-party.*

*This Charter-party is issued in two original sets, one to be held by each party.*

              **Owners**                                **Charterers**

For and on behalf of
PCL (Shipping) Pte. Ltd.



.....................................................
As Disponent Owner



The Charter Party is a computer generated copy of a sample 1979 form, printed under license from the Association of Ship Brokers & Agents (U.S.A.) Inc. using software which is the copyright of DATAWORKSGLOBAL DEVELOPMENTS LTD is a practice copy of the original document within can be modified, amended or added to only by the striking out of original character, or the insertion of new characters, such characters being clearly highlighted so that any form made by the licensee or end user as permitted and by the authors. Dataworks assume no responsibility for any loss or damage caused as a result of discrepancies between the original approved documents and this form.

# RIDER CLAUSES TO MV. IKAN SERONG / AGARWAL CHARTER-PARTY DATED 11TH OCTOBER'2007.

## Clause 30 - Port Restictions

Owners/Vessel/Master to comply with all rules, regulations and requirements, and to satisfy themselves as to all drafts and other restrictions at the load and discharge port. Such rules, regulations and requirements are fully incorporated into this Charter-party for their full terms and effect and any time lost as a result of Owners/Vessel failure to comply or to satisfy shall not count as laytime or time on demurrage.

Charterers' confirm no draft restriction at discharge port Magdalla / Navlakhi.

## Clause 31 - Vessel Description

MV IKAN SERONG
PAN FLG, 06 BLT, SDBC
56,023 DWAT ON 12.5 M SSW
LOA/BM 189.9/32.2 M
5H/5H, TPC 55.8 MT
GR/BL 2,500.655 / 2,404.351 CBF
CRANES 4 X 30.5 MTS + GRABS 4 X 12 CBM
ALL DETAILS "ABOUT"

- VSL WILL LOAD ABOUT 54,500 MTON COAL

  * OWNERS TO SUPPLY MINM 10 CBM GRABS AT LOADPORT AND DISCHARGE PORT.

  * CHARTERERS ALWAYS TO ARRANGE EXPERIENCED SHORE LABOUR TO OPERATE VESSEL GEAR/GRABS.

*Owners warrant that during the currency of this Charter-party.*

- The Owners shall procure that both the Vessel and 'The Company' (As defined by ISM Code) comply with the requirements of ISM Code and the BIMCO Standard ISM Class to be incorporated into this Charter-party.
- Vessel's Class Lloyds 100A1 or Equivalent.
- Vessel shall not change ownership and/or class without Charterers written consent.
- Vessel Hull and Machinery insurance shall be fully maintained and will not be changed.
- Vessel is fully P+I covered which shall be maintained.
- Vessel will proceed at maximum despatch to discharge port.
- Vessel's all hold are clear and unobstructed without center-line bulkheads and also suitable for grab discharge.
- Vessel suitable for grab discharge in the square of hatch as far as normal bulk carrier can be.
- Master/Owners will tender ETA to Charterers every alternate day at sea.
- Vessel is self trimming bulk carrier.

1

Saigal SeaTrade Mumbai

## Clause 32 – Laycan

20ᵗʰ / 29ᵗʰ October'2007.
(Vessels ETA 20ᵗʰ October, AGW, WP, UCAE.)

## Clause 33

Deleted.

## Clause 34 - Tax

Taxes/dues on cargo to be for Charterers/Shippers/Receivers account, same on vessel/freight to be for Owners account.

Extra insurance if any for Owners account, overage premium if any for vessels between 16-20 years to be for Owners account.

## Clause 35 - Arrival Notice at Loadport

Owners/Master to give Shippers, Shippers agents, Charterers and Port agents 4/3/2/1 days actual notice of vessels arrival at loadport. Following the 1 days ETA notice Master to promptly notify the Shippers/Receivers/Agents if any 2 or more hours change in ETA loadport/discharge port.

## Notice of Readiness at Loadport.:

The vessels to arrive with clean ballast only. After the vessel has arrived at the loading port and is ready to load coal, Master shall give notice of readiness to Shippers at the loading port. Notice of Readiness to be tendered by the vessel during office hours i.e. from 0900 hours to 1700 hours Monday to Friday and 0900 hours to 1200 hours on Saturdays but always excluding holidays (holidays to be only 6 statutory holidays which to be specified by Charterers), provided vessel is in free pratique and ready in all respects to load her cargo. If designated loading anchorage is not available then vessel may tender notice of readiness from customary waiting area whether in free pratique or not, whether custom cleared or not, and delay in obtaining free pratique to be for Owners account.

Time and NOR at load/discharge ports to count WIPON/WIBON/WIFPON/WCCON.

Owners have the right to tender Notice of Readiness by fax/writing/telex/cable.

Vessel will be loaded in the order in which notice of readiness is received. Laydays at the port of loading shall be weather working days of 24 consecutive hours Saturday, Sunday & holidays but always excluding 6 statutory (which to be specified by Charterers) unless used if used actual time used to count.

Laydays shall commence (12) twelve hours after tendering of notice of readiness unless sooner commenced in which case actual time used to count. Turntime 12 hours at loadport unless sooner commenced.



2                              Saigal SeaTrade Mumbai

Should the vessel not be ready in every respect to load the cargo, time to stop counting from Shippers inspection failure until re-inspection passing time.

Upon completion of loading Master to cable immediately to Charterers and Port agents at load and discharge port giving vessel's sailing date, exact quantity of cargo loaded and vessel's expected arrival date and draft at first port of discharge.

## Clause 36 - Hold Cleaning

Vessel's holds to be clean-swept and dry before commencement of loading and tendering notice of readiness to load to the Shippers.

## Clause 37

If vessel tenders notice of readiness prior to the agreed date of laydays commencement Shippers/Charterers are not obliged to berth the vessel or commence loading and laydays shall commence (12) twelve hours after 0900 hours on the agreed date of laydays commencement unless otherwise agreed by Charterers but actual time used to count, unless sooner commenced.

## Clause 38

If the vessel arrives outside of her laydays and if reconfirmed by Charterers, the vessel to be loaded in regular turn. Notwithstanding the turntime, for an early arrival, time to count on berthing or commencement of laydays whichever is the sooner.

For a vessel missing her cancelling Owners have the option of providing a substitute vessel, this is provided such substitute is of similar description and cargo intake.

Furthermore such substitute tonnage nominated by Owners to have an E.T.A within the original laydays. Charterers approvals of any such nominated substitute tonnage not to be unreasonably withheld, such substitution to be reconfirmed by Charterers' latest one working day after nomination is received.

## Clause 39

Deleted.

## Clause 40

The vessel shall close hatches and vacate the berth as soon as loading is completed. Any demurrage, loss or damage incurred by Shippers as a result of the vessel's failure to vacate the berth promptly, including such as may be incurred due to resulting delay in the docking of other vessels awaiting their turns to load shall be paid by Owners to Shippers.

First opening and last closing of hatches shall be for Owners' account and actual time lost shall not count as laytime.



3                                    Saigal SeaTrade Mumbai

## Clause 41

Laytime shall end when the loading apparatus is withdrawn after completion of loading.

## Clause 42 - Freight

```
USD 42.00 PMT FIOT BASIS 1/1 - MAGDALLA, WC.INDIA
USD 41.55 PMT FIOT BASIS 1/1 - NAVLAKHI, WC.INDIA
```

```
IT IS HEREBY MUTUALLY AGREED CHARTERERS HAVE THE RIGHT TO CALL
OTHER DISCHARGE PORTS IN INDIA BASIS SINGLE OR COMBINATION OF TWO
PORTS ALWAYS ON THE SAME COAST, AND OWNERS WILL GIVE THEIR RATE
ON AN OPEN BOOK SYSTEM, WITH SAME TIME CHARTER RETURNS AS PER
THIS CONTRACT.
```

Freight to be remitted in U.S. Dollars by telegraphic transfer to Owners bank :-

(reverting)

## Clause 43

In the event that the vessel arrives at the loadport prior to the commencement of her laydays it is understood that she may only tender her notice of readiness on the first layday unless otherwise agreed by Charterers but actual time used to count, unless sooner commenced.

## Clause 44 - I.T.F.

Performing vessels to comply with I.T.F or similar agreement, regulations or bonafide trade union agreement and any delay and/or extra expenses incurred due to vessel's crew wages and/or terms not complying with those laid down by the International Transport Worker's Federation (I.T.F) or due to the vessel's flag, age or ownership to be for Owners' account.

## Clause 45

Performing vessel under this Charter-party have no option to complete with other cargo(es).

## Clause 46

Vessel to provide all necessary light for night work as on board.

## Clause 47

Shifting by mooring lines required while vessel on berth to be at Owners' expense and time to count as laytime.

4                    Snigal SeaTrade Mumbai



## Clause 48

Laytime to be non-reversible between loading and discharge ports.

## Clause 49

Deleted.

## Clause 50

The vessel shall pay and bear all port charges, tonnage dues, light dues and other taxes assessments and charges which are customarily payable by Owners on or with respect to the vessel or freight whether in the country of loading or discharging port(s).

## Clause 51

Time taken from anchorage to discharge berth shall be considered part of the voyage and shall never count as laytime even if the vessel is already on demurrage. Time taken steaming to count from anchor up.

## Clause 52

Any lien which the Owners may have on the coal for demurrage or average shall not be made a reason for withholding the issue of Bill(s) of Lading to the Shippers.

## Clause 53

Stevedore damages to be settled directly between owners and the stevedores, however should owners fail to reach an agreement with the stevedores within 60 days, Charterers always to remain ultimately responsible.

## Clause 54

Time lost at any time by reason of all or any of the following causes shall not be computed in the loading or discharging time or as demurrage viz:

War, rebellion, tumults, civil commotions, insurrection, political disturbances, epidemics, quarantine, riots, strike, lock-outs, stoppage of Miners, Workmen Lightermen, Tugboatmen or other essentials to the working, carriage, delivery.

Shipment or discharge of said cargo whether partial or general or accident and/or breakdown at the mines at Shippers or receivers works or wharf, landslips, flood, frost or snow, bad weather interruption of river and/or canal navigation, intervention of sanitary, customs and/or other constituted authorities partial or total stoppage on rivers/canals or on railways or any other cause beyond control of Charterers, calculation of time at each end shall be based on weight inserted in Bill(s) of Lading and shall not be subject to adjustment with weight agreed for freight settlement. In case of deadfreight then the time for loading and discharging shall be calculated on basis of tonnage for which freight is paid and not on the actual quantity loaded.

5



## Clause 55

If war breaks out between any countries directly affecting the performance of this Charter-party, both Owners and Charterers to have the option of cancelling this Charter but subject to no cargo on board.

## Clause 56

Time lost due to inefficiency or any other cause attributable to the vessel, her Master, her crew or the Owners, which affects the working or berthing of the vessel, shall not count as laytime or as time on demurrage.

## Clause 57

Time taken for ballasting and/or deballasting will not count as laytime, less concurrent with loading and discharging provided same will not affect the stipulated loading and/or discharging rate.

## Clause 58

All negotiations and eventual fixture are to remain strictly private and confidential and are not to be disclosed outside the office of the parties concerned.

## Clause 59

Owners to appoint Charterers nominated agents both ends subject to competitive port D/A.

## Clause 60

Vessels cranes/grabs to be driven by shore labour free of expense to Owners.

## Clause 61

Deleted.

## Clause 62 - Arrival Notice at Discharge Port.

On completion of loading, Master to send sailing cables to Charterers and Receivers with vessel ETA discharge port, total cargo loaded as per Bill(s) of Lading, and the cargo stowage plan. Master also to cable Charterers and Receivers arrival notice at 3/2/1 days prior to arrival at discharge port.

## Clause 63 - Notice of Readiness at Discharge Port.

On arrival discharge port, Master shall tender the notice of readiness in writing or telex to the receivers certifying that vessel has arrived and is in all respect ready to commence discharging

6



the cargo on board with all shipboard equipment and machinery in efficient working conditions whether in port or not, whether in berth or not, whether in free pratique or not and whether customs cleared or not, during office hours. Notice of Readiness to be tendered by the vessel during office hours i.e. from 0900 hours to 1700 hours Monday to Friday and 0900 hours to 1200 hours on Saturdays, but always excluding holidays (holidays to be only 6 statutory holidays which to be specified by Charterers) unless used if used actual time used to count, whether in port or not, whether in berth or not, whether customs cleared or not, whether in free pratique or not. Laydays at the port of discharge shall be weather working days of (24) twenty-four consecutive hours including Saturday, Sunday and holiday excluding 6 statutory holidays unless used. Laydays shall commence (12) twelve hours after tendering the notice of readiness, actual time used to count. Turn time 12 hours at each discharge port unless sooner commenced.

Owners have the right to tender Notice of Readiness by fax/writing/telex/cable.

Any time lost subsequently by vessel not fulfilling the requirement of readiness in all respect to discharge, Owners shall be responsible for such time loss, provided such failure prevents vessel from discharging. Time used for shifting between anchorage and working anchorage if any not to count as laytime.

## Clause 64 - Daily Discharging

Report to be signed by Chief Officer, Ship Owners' agent and stevedore. This will facilitate calculation of laytime.

## Clause 65 - Freight Payment

95 pct freight to be paid to Owners nominated bank account within 3 working days after completion loading but always before breaking bulk and signing/releasing of Bill(s) of Lading marked 'freight payable as per charter-party' and balance within 30 days after completion of discharge along with demurrage/dispatch settlement.

Freight discountless and deemed earned whether cargo and/or vessel lost or not.

If required in Charterers' option, Owners to issue Bill(s) of Lading marked 'Freight prepaid'. Such Bill(s) of Lading to be released on receipt by Owners, directly from Charterers' bank telex confirmation that 95pct freight has been remitted.

## Clause 66                         -

But if lighterage is necessary due to vessel not complying with given restrictions for both loading and discharge ports then cost to be for Owners' account and time used not to count as laytime.

## Clause 67
Deleted.



7                              Saigal SeaTrade Mumbai

## Clause 68

Bill(s) of Lading form to be in Charterers/Shippers format, Bill(s) of Lading form to be in Congen form.

## Clause 69 - Cranes/Grab Performance

Owners warrant that the vessel has 4 X 30.5 tons cranes + 4 X 12 CBM or more capable of loading at the rate of 12,000 MT PWWD SHINC & delivering at the rate of 10,000 MT PWWD SHINC at Magdalla / 13,500 MT PWWD SHINC at Navlakhi provided weather permitting basis cranes + grabs provided shore facility/barges can deliver/receive as quickly. In the event of breakdown of cranes + grabs of the vessel by reason of disablement or insufficient power, the period of such inefficiency shall not count as laytime pro-rata even on demurrage.

Should the port authority at discharge port for above reason shift the vessel to layberth or anchorage, then in such event all direct expenses related to shifting in and out of berth to be on Owners account and time not to count as laytime even on demurrage.

In case of any deficiency the independent surveyors report shall be binding on Owners and Charterers.

## Clause 70 - Detention

Deleted.

## Clause 71

All holds can be served by vessels cranes and grabs onboard.

## Clause 72

BIMCO Standard ISM Clause to be incorporated in this Charter-party.
BIMCO ISPS Clause to apply.

## Clause 73 - Bill(s) of Lading Clause

Owners to authorise Charterers agents to sign Bill(s) of Lading on behalf of Master/Owners in strict accordance with the Mate's Receipt.

Should original Bill(s) of Lading not arrive at port of discharge in time, Charterers to present their single L.O.I in accordance with Owners P&I Club wordings for Owners signed by authorised Officers from Charterers office only to release cargo without production of original Bill(s) of Lading at port of discharge. Once Owners confirm faxed L.O.I is in order the hard copy to be delivered to Owners office.

8                                        Saigal SeaTrade Mumbai



### Clause 74

In case there is any discrepency between the main body and rider clauses then the rider clauses will prevail.

### Clause 75

'Voywar 2004' to apply.

### Clause 76

First shifting to be for Owners' account and time not to count, subsequent shifting to be for Charterers' account and laytime to count.

### Clause 77

Actual initial and final draft survey time at load/discharge not to count in laytime, and any intermediate draft survey by the ships staff affecting load/discharge operations not to count in laytime even if vessel is on demurrage.

### Clause 78 – Letter of Credit Payment Clause

Deleted.

### Clause 79 – Load Port(s)

1 SP 1/2 SA(S) MUARA PANTAI, INDONESIA.

### Clause 80 – Discharge Port(s)

IN CHARTERERS' OPTION
1/2 SA(S) MAGDALLA, W.C. INDIA
1/2 SA(S) NAVLAKHI, W.C. INDIA

## ADDITIONAL CLAUSES

1) If the Vessel is not ready to load in all respects before the cancelling date, Charterers have the option of cancelling the acceptance of the vessel, such option to be declared if demanded atleast 48 hours before vessels expected time of arrival at loadport.

2) When Owners nominate the performing vessel within laycan, then Owners to provide following certificates for DG Shipping faxed to Charterers for submission to DG Shipping and all certificates to be valid for the entire period of the voyage.

   - Registration Certificate

9                                Saigal SeaTrade Mumbai



- IOPP Certificate
- Cargo Ship Safety Equipment Certificate
- Cargo Ship Safety Radio Certificate
- Cargo Ship Safety Construction Certificate
- International Tonnage Certificate
- Loadline Certificate
- P&I Cover
- Document of Compliance
- Safety Management Certificate

Also need the annual endorsement of the above certificates. Owners to arrange to fax all valid certificates as per Charterers requirements.

\*  \*  \*



# ISPS Clause for Voyage Charter Parties

(a) (i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(b) (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and any other information the Owners require to comply with the ISPS Code.

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account and any delay caused by such failure shall be compensated at the demurrage rate.

(c) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code.

(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code shall count as laytime or time on demurrage if the Vessel is on laytime or demurrage. If the delay occurs before laytime has started or after laytime or time on demurrage has ceased to count, it shall be compensated by the Charterers at the demurrage rate.

(d) Notwithstanding anything to the contrary provided in this Charter Party, any additional costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(e) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

11                          Saigal SeaTrade Mumbai



# War Risks Clause for Voyage Chartering, 2004
## (Code Name: VOYWAR 2004)

(a)    For    the    purpose    of    this    Clause,    the    words:

(i) "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(ii) "War Risks" shall include any actual, threatened or reported:

War; act of war; civil war; hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; acts of hostility or malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever); by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(b) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(c) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(d) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

Saigal SeaTrade Mumbai



(e) (i) The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefor shall be for their account.

(ii) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, or in order to fulfil the Owners' obligation under this Charter Party, the Vessel is within, or is due to enter and remain within, or pass through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then the actual premiums and/or calls paid shall be reimbursed by the Charterers to the Owners within 14 days after receipt of the Owners' invoice. If the Vessel discharges all of her cargo within an area subject to additional premiums as herein set forth, the Charterer shall reimburse the Owners for the actual additional premiums paid which may accrue from completion of discharge until the Vessel leaves such area or areas referred to above. The Owners shall leave the area as soon as possible after completion of discharge.

(f) The Vessel shall have liberty:-

(i) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;

(ii) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(iii) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(iv) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(v) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;

(vi) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(g) If in compliance with any of the provisions of sub-clauses (b) to (f) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.



13                    Saigal SeaTrade Mumbai

# EXHIBIT 2



**PCL (SHIPPING) PTE. LTD.**
Company Registration No: 200515342M
(A Subsidiary of PCL)

Ref No:  CD\INV\000848 (revised)
Date:       13 May 2008

No. 1 Kim Seng Promenade #07-02
Great World City Singapore 237994
Tel: 6733 3500   Fax: 6737 3966
Telex: RS 23245
Website: http://www.pclsg.com

Agarwal Coal

## FREIGHT INVOICE

MV IKAN SERONG / AGARWAL COAL COA 11 OCT 2007
LOAD PORT :  MUARA PANTAI, INDIA (SAILED 30/10/07)
DISPORT :  NAVLAKHI, INDIA (SAILED 18/11/07)
CARGO :  55,061 MT COAL IN BULK
FREIGHT  :  US$41.55 PER MT FIOT BSS 1/1 NAVLAKHI, INDIA

| | | |
|---|---|---|
| FREIGHT FOR 55,061 PER MT FIOT BSS 1/1 NAVLAKHI, INDIA | = | US$ 2,287,784.55 |
| DEMURRAGE @ LOAD PORT | = | US$ 216,222.30 |
| DESPATCH @ DISPORT | = | (US$ 37,673.65) |
| LESS FREIGHT RECEIVED ON 06/11/07 | = | (US$ 2,196,908.90) |
| LESS FREIGHT RECEIVED ON 09/05/08 | = | (US$ 210,059.80) |

Total payable

US$ 59,364.50

Bank Detail:

THE BANK OF NEW YORK, NEW YORK
FOR ACCOUNT OF OCBC BANK, SINGAPORE
FAVOURING : PCL (SHIPPING) PTE LTD
ACCOUNT NO: 501-899256-201-USD
UNDER TESTED TELEX ADVICE TO OCBC BANK, SINGAPORE
(TLX ADDRESS: RS21209 OVERSEA).

# EXHIBIT 3

## LAYTIME STATEMENT

Date:  05/16/2008 12.00.0

| Ship: | JKAN SERONG MES 1614 | | Voy. No.: | 15 |
|---|---|---|---|---|
| Charterer: | AGARWAL COAL | | C/P Date: | 11/10/2007 |
| Port: | MUARA PANTAI | | | |

| | | |
|---|---|---|
| Vessel arrived | 22/10/2007 | 07:06 |
| Pilot on board | | |
| Vessel berthed | | |
| Notice tendered | 22/10/2007 | 09:00 |
| Notice accepted | 22/10/2007 | 09:00 |
| Laytime commenced | 22/10/2007 | 21:00 |
| Loading commenced | 26/10/2007 | 08:20 |
| Loading completed | 30/10/2007 | 14:15 |
| Loading Laytime ceased | 30/10/2007 | 14:15 |
| Vessel sailed from berth | 30/10/2007 | 16:00 |

| | | | |
|---|---|---|---|
| Cargo Quantity: | 55,061.000 | M | COAL |
| Terms: | 12,000.00 | M | |
| Rate of Demurrage/Despatch: | 70000  / 35000 | | |

TIME USED AS PER STATEMENT OF FACTS

| Date | Day | From | To | % | Remarks | Days | Hrs | Mins |
|---|---|---|---|---|---|---|---|---|
| 22/10/2007 | Mon | 21:00 | 00:00 | 100.00 | laytime commenced | 00 | 03 | 00 |
| 23/10/2007 | Tue | 00:00 | 00:00 | 100.00 | | 01 | 00 | 00 |
| 24/10/2007 | Wed | 00:00 | 00:00 | 100.00 | | 01 | 00 | 00 |
| 25/10/2007 | Thu | 00:00 | 21:00 | 100.00 | | 00 | 21 | 00 |
| 25/10/2007 | Thu | 21:00 | 22:00 | 0.00 | initial draft survey | 00 | 00 | 00 |
| 25/10/2007 | Thu | 22:00 | 00:00 | 100.00 | | 00 | 02 | 00 |
| 26/10/2007 | Fri | 00:00 | 00:00 | 100.00 | | 01 | 00 | 00 |
| 27/10/2007 | Sat | 00:00 | 00:00 | 100.00 | demurrage 27/10/07 0807 hrs | 01 | 00 | 00 |
| 28/10/2007 | Sun | 00:00 | 00:00 | 100.00 | | 01 | 00 | 00 |
| 29/10/2007 | Mon | 00:00 | 00:00 | 100.00 | | 01 | 00 | 00 |
| 30/10/2007 | Tue | 00:00 | 14:15 | 100.00 | vessel completed @ Muara Pantai | 00 | 14 | 15 |

| | | | |
|---|---|---|---|
| Time Used | | 07 | 16 | 15 |
| Time Allowed | | 04 | 14 | 07 |
| Time Lost | | 03 | 02 | 08 |

On demurrage:   27/10/2007  12:07
Demurrage: 3.08889 days at USD 70000 per day = USD 216222.30